IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHONTRAL L. FARRIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-825-D |
| ) | |
| R JAMES NICHOLSON, SECRETARY ) | |
| OF VETERANS AFFAIRS, UNITED ) | |
| STATES DEPARTMENT OF VETERANS ) | |
| AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 20], which seeks a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on all claims brought by Plaintiff Shontral Farrier under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. Plaintiff has filed a timely response [Doc. 25], and each party has filed an authorized reply brief [Docs. 27, 29].[1] The motion is thus ripe for decision.

**Standard of Decision**

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is essential to the proper disposition of a claim under controlling law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a rational trier of fact could resolve the issue either way. *See id.* All facts and inferences must be viewed in the light most favorable to the

---

[1] Defendant recently filed an unauthorized supplemental brief [Doc. No. 34], which is disregarded.

non-moving party. *Id.* at 255. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries its initial burden, the nonmovant must then "set forth specific facts" outside of the pleadings that would be admissible in evidence and that show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Although a district court has the discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.*

### Statement of Undisputed Facts[2]

Plaintiff, who is an African-American female, was hired for a position of telephone operator at the Oklahoma City VA Medical Center on August 11, 2003. The position was classified as a temporary/term appointment not to exceed the date of August 11, 2004, but with the possibility of termination sooner based on circumstances such as lack of work, lack of funds, and unsatisfactory performance or conduct. Plaintiff signed a document acknowledging these terms and stating an understanding that the appointment did not qualify her for promotion or reassignment to other positions or for noncompetitive conversion to a career-conditional appointment. Plaintiff was informed by her immediate supervisor, Curtis Bruner, however, that the position was probationary

---

[2] This statement includes both facts presented by Defendant in compliance with Local Civil Rule LCvR56.1(b) that are unopposed by Plaintiff, and facts presented by Plaintiff in her response brief, with proper support as required by Fed. R. Civ. P. 56(e)(1), that are unopposed by Defendant in his reply brief. All are stated in the light most favorable to Plaintiff.

and could become permanent.[3]  Also, Plaintiff received a written personnel notice regarding her appointment that stated:  "Reason for Temporary Appointment:  Pending Decision on Permanent Position."  *See* Def.'s Mot. Summ. J. [Doc. 20], Ex. 3.  Another telephone operator hired at the same time as Plaintiff on the same terms, Bonita Edwards, was subsequently retained past her one-year term and hired into a permanent position without a formal application or selection process.

During Plaintiff's employment, eight individuals of different races and both genders worked as telephone operators.  There were five females including Plaintiff, three of whom were African-American.  Plaintiff's first-line supervisor, Mr. Bruner, was an African-American male; Plaintiff's second-line supervisor, Leigh Mulanax, was a Caucasian female.  The telephone office operates continuously – twenty-four hours per day and seven days per week – and receives between 1,000 and 5,000 calls per day.  Operators receive all "Code" calls, requiring emergency medical, police or fire service, and they page doctors and nurses when needed.  Good communication among operators is imperative because a call responding to a page may not come back to the switchboard console of the operator who issued the page.

On July 23, 2004, Plaintiff was notified of the termination of her temporary appointment.  She received a letter stating her appointment was "not being extended due to the following unsatisfactory conduct issues:  consistently late in relieving other telephone operators[;] disrespectful comments and attitude toward coworkers; and lack of professionalism in performance of duties."  *See* Def.'s Mot. Summ. J. [Doc. 20], Ex. 6.  The letter also stated that the effective date of the termination would be August 6, 2004, and Plaintiff would be carried on administrative leave status from her last day of work on July 23, 2004, until that date.  The termination decision was

---

[3] Defendant points out that Mr. Bruner lacked authority to extend Plaintiff's term or to convert her status from temporary to permanent.  Mr. Bruner could only recommend such action, which required authorization by senior management officials.

made by Ms. Mulanax on or about July 21; she orally informed Plaintiff of her decision on July 23. According to Plaintiff and Mr. Bruner, Ms. Mulanax stated at the time of Plaintiff's termination that she (Plaintiff) "didn't fit in" with other operators and there were complaints about her; when questioned about the decision by Mr. Bruner, Ms. Mulanax also said it had something to do with a tape recorder that was found in the telephone office that Ms. Mulanax believed Plaintiff had been using to record conversations or activity inside the office. *See* Pl.'s Resp. Br. [Doc. 25], Ex. G, Farrier Aff. ¶ 38; Ex. B, Bruner Dep. 44:12-21, 45:5-10.

Mr. Bruner testified during his deposition that he did not agree with the decision to terminate Plaintiff's employment and he had not reported any conduct or performance problems concerning Plaintiff. Both Mr. Bruner and Ms. Mulanax testified that the tardiness issues involving Plaintiff were resolved in 2003. Ms. Mulanax had no conversation with Plaintiff regarding the tape recorder that was found in the telephone office, but Ms. Mulanax testified she had reports from other telephone operators complaining about it and attributing it to Plaintiff. Ms Mulanax also testified that Plaintiff's co-workers complained about her failing to communicate with them and being argumentative. Plaintiff claims that all of Ms. Mulanax's stated reasons for the termination decision are pretextual and that Ms. Mulanax was actually motivated by gender and race discrimination and retaliation for EEO activities.

Plaintiff makes allegations in her Complaint, and has presented evidence during discovery, regarding a litany of incidents involving other telephone operators that occurred during Plaintiff's employment and allegedly created a hostile work environment of gender discrimination, racial discrimination, and reprisal for EEO activities. Plaintiff's only contact with an EEO officer, Pam McKinney, occurred in September, 2003, and allegedly concerned threatening behavior by a male telephone operator, Jerry Young, toward Plaintiff after she confronted him about smoking in the telephone office. Plaintiff declined to make either an informal or formal EEO complaint; she did

4

contact the VA Medical Center police department to report Mr. Young's conduct. Plaintiff reported other incidents to Mr. Bruner, and he reported many of them to Ms. Mulanax. One incident in June, 2004, involved conduct of a male coworker, James Dunmore, who allegedly fondled himself while staring at Plaintiff. Also in June, 2004, Plaintiff complained directly to Ms. Mulanax about graffiti on walls inside the medical center that suggested sexual activity between Mr. Bruner and Plaintiff. Other alleged incidents involved coworkers yelling at Plaintiff, making mean comments to or about her, using derogatory names such as "bitch" and "snitch," and ignoring Plaintiff or not talking to her.

## Defendant's Motion for Summary Judgment

By its motion, Defendant seeks summary judgment on all claims for the following reasons: (1) Plaintiff allegedly cannot recover any of the remedies she seeks for unlawful termination; (2) Plaintiff allegedly cannot establish a *prima facie* case of retaliatory termination; (3) Plaintiff allegedly fails to establish a *prima facie* case of sexual harassment; (4) Plaintiff allegedly cannot establish a hostile work environment based on gender, race, or retaliation; and (5) Plaintiff cannot prove Defendant's legitimate, nondiscriminatory reasons for her termination are pretextual. Each of these issues will be addressed below.

## Discussion

### A.   Remedies for Wrongful Discharge

#### 1.   Punitive Damages

Defendant asserts that the federal government is exempt from liability for punitive damages under 42 U.S.C. § 1981a(b)(1). Plaintiff concedes this point. *See* Pl.'s Resp. Br. at 32. Thus, Defendant is entitled to a judgment as a matter of law on the issue of punitive damages.

#### 2.   Reinstatement, Front Pay and Back Pay

Defendant contends Plaintiff cannot recover any of the equitable remedies provided by Title VII due to the temporary nature of her appointment. Defendant argues that Plaintiff cannot be

reinstated to a position that ended by its terms on August 11, 2004, and thus she also is not entitled to front pay, which is available only as an alternative to reinstatement. As to back pay, Defendant argues that Plaintiff has already received full compensation for the duration of her one-year term of employment. Plaintiff responds that a genuine dispute of material facts precludes summary judgment on these issues. Specifically, Plaintiff contends she has presented sufficient facts from which reasonable jurors could find that, but for her unlawful termination, Plaintiff would have remained employed past the one-year term and would have secured a permanent position, like her similarly situated coworker, Bonita Edwards.

Defendant relies on *Geller v. Markham*, 635 F.2d 1027 (2d Cir. 1980), for the proposition that reinstatement is an unwarranted remedy for temporary employees. In the Court's view, however, *Geller* does not state a categorical rule but reflects a fact-based decision. The case involved a jury trial and a verdict awarding the plaintiff damages equal to one-year's salary. The appellate court agreed with the trial judge's conclusion that reinstatement was inappropriate because the jury's verdict implied a factual finding that the plaintiff was deprived of only one-year's employment. *Id*. at 1036. The availability of reinstatement thus hinged on a determination by the trier of fact as to the length of employment that was lost due to unlawful discrimination.

Plaintiff relies on *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1361 (11th Cir. 1982), to argue that reinstatement may be awarded to fixed-term employees who can establish facts showing a likelihood of continued employment beyond the initial term. Research reveals no Tenth Circuit authority on point, but *Walker* represents an accepted view. *See Gansert v. Colorado*, 348 F. Supp. 2d 1215, 1231 (D. Colo. 2004); *Keller v. Board of Educ.*, 182 F. Supp. 2d 1148, 1162 (D.N.M. 2001). Under this view, a plaintiff employed under a fixed-term contract or in a term position, such as a teacher, can show economic injury beyond the employment term by presenting evidence that "the particular plaintiff's contract had been renewed in the past, that contracts of similarly situated

6

employees had been renewed, or that the employer had made a promise of continued employment." *Walker*, 684 F.2d at 1362.

In this case, Plaintiff has submitted evidence of a similarly situated employee's continued employment beyond the contract term. Accordingly, the Court finds Plaintiff has demonstrated a genuine dispute of material fact as to whether she would have remained employed after August 11, 2004, absent Ms. Mulanax's allegedly unlawful decision to terminate Plaintiff's appointment. Therefore, Defendant is not entitled to summary judgment on the issue of whether Title VII's equitable remedies are available to Plaintiff on her termination claim.

**B.     Retaliatory Termination**

Defendant challenges Plaintiff's ability to satisfy two elements of a *prima facie* case of retaliation, that is, (1) she engaged in statutorily protected activity and (2) there was a causal link between the protected activity and the adverse action. *See Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1119-20 (10th Cir. 2005); *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1314 (10th Cir 2005). Close temporal proximity between protected activity and alleged retaliatory conduct alone may establish a causal link. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999).

As a federal employee, Plaintiff had available, and was required to utilize, an administrative process within the employing agency for pursuing allegations of discrimination and retaliation. *See* 29 C.F.R. §§ 1614.101-.110. The process starts informally with pre-complaint counseling activities: "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." *Id*. § 1614.105(a)(1). It is undisputed Plaintiff contacted the EEO officer on only one occasion, and on that occasion, declined to make an EEO complaint. Because Plaintiff first filed an EEO charge after her termination, Defendant contends no protected activity

7

occurred during Plaintiff's employment and Ms. Mulanax, the decision maker, had no knowledge of any protected activity at the time of Plaintiff's termination.

Plaintiff relies on the fact that she complained to her direct supervisor, Mr. Bruner, who in turn talked to Ms. Mulanax about numerous incidents of Plaintiff's conflict with coworkers. Plaintiff also notes that she complained to Ms. Mulanax about the incident in which she and Mr. Bruner were subjects of sex-related graffiti and that the time to make an EEO complaint regarding this incident had not expired when she was terminated. Plaintiff in argument describes her complaints as being "about the hostile and abusive work environment and sexual harassment." *See* Pl.'s Resp. Br. [Doc. 25] at 33. A careful reading of Plaintiff's brief reveals, however, that she presents no fact and cites no record evidence that shows she spoke of the incidents to her supervisors in those terms.

Defendant provides no legal authority for the proposition that a federal employee must contact the agency's EEO officer and lodge an informal or formal EEO complaint in order to have engaged in protected activity. Title VII's protection from retaliation is two-fold; it contains both a participation clause, which protects an employee who makes a charge or participates in a proceeding, and an opposition clause, which protects an employee who opposes an unlawful practice.[4] In arguing that Plaintiff's conduct was not protected, Defendant focuses on the participation clause and contends Plaintiff did not make a complaint by simply talking to her supervisors. *See* Def.s' Reply Br. [Doc. 27] at 6-10 (quoting the "Participation Clause"). In her response, Plaintiff focuses on the opposition clause, arguing she promptly reported incidents of

---

[4] The statute provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . <u>because he has opposed any practice</u> made an unlawful employment practice by [Title VII], or <u>because he has made a charge</u>, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a) (emphasis added).

abusive behavior to her supervisors and was discharged within the time period for initiating the internal complaint process. Viewed as a claim under the opposition clause, the issue becomes whether Plaintiff communicated to her supervisors that she was complaining of unlawful discrimination or harassment "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

The court of appeals' decision in *Peterson* is instructive. In that case, the plaintiff claimed that her employer retaliated against her for opposing discriminatory treatment of a Native American coworker. She accused a deputy warden at the correctional facility where she worked – who had "an abrasive and authoritarian management style" and frequently used profanity and racial epithets – of racial and religious discrimination. *Id*. at 1185. She first made these accusations, however, after the Native American employee had been terminated. Prior to that time, the plaintiff had merely refused to participate in completing the employee's performance evaluation and had told the warden's wife that she thought the deputy warden was engineering a poor evaluation for the employee. In the lawsuit, the plaintiff claimed the deputy warden took retaliatory actions against her for refusing to cooperate in the evaluation and complaining to the warden's wife. Because the plaintiff on neither occasion made any mention of unlawful discrimination, however, the court of appeals concluded that the absence of such a reference precluded a retaliation claim based on those activities. In reaching this conclusion, the court of appeals reasoned:

> Opposition to an employer's conduct is protected by § 2000e-3(a) only if it is opposition to a "practice made an unlawful employment practice by [Title VII]." Title VII does not prohibit all distasteful practices by employers. [The deputy warden] Tansy could be unconscionably rude and unfair to [the Native American employee] Mooney without violating Title VII. In this case Tansy's treatment of Mooney would constitute an unlawful employment practice under Title VII only if Tansy had the requisite intent – that is, only if Tansy mistreated Mooney because of Mooney's race or religion. Accordingly, [the plaintiff] Petersen's opposition to

9

>Tansy's treatment of Mooney would be protected opposition only if her opposition were based on Tansy's unlawful intent. To oppose plain vanilla rude and unfair conduct by Tansy is not to oppose conduct "made an unlawful practice by [Title VII]." (We should note, however, that Petersen's opposition could be protected even if she were wrong about whether Tansy had in fact engaged in a violation of Title VII; it would be enough if she had a "good faith belief that Title VII ha[d] been violated.")
>
>It therefore follows that Petersen's superiors could not know that she was engaging in protected opposition unless they knew that her opposition was based (at least in part) on Tansy's bigoted motives. If, for all they knew, Petersen was opposing Tansy's treatment of Mooney simply because the treatment violated established practices and was unfair to Mooney, they would not know that Petersen was "oppos[ing a] practice made an unlawful employment practice by [Title VII]."
>
>It is crucial, however, whether Petersen's superiors knew that she was engaging in protected opposition. Section 2000e-3(a) bars retaliation by an employer only if it is "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition. As a result, retaliation against Petersen would be prohibited by § 2000e-3(a) only if the superior retaliating against her knew that her opposition to Tansy's treatment of Mooney was motivated by a belief that he was engaging in racial or religious discrimination.
>
>We believe that this result is compelled not only by the natural reading of the statutory language, but also by the purpose of the provision. The purpose of § 2000e-3(a) is to let employees feel free to express condemnation of discrimination that violates Title VII. That purpose is hardly served by imposing sanctions upon employers who take action against employees who never communicate their concern about unlawful discrimination.

*Petersen*, 301 F.3d at 1188-89 (citations omitted); *see also Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (female recruit's complaints about her treatment during a police training program were not statutorily protected because she did not allege sexual harassment in her complaints).

Similarly, in this case, Ms. Mulanax has testified that she was unaware of any EEO activity on Plaintiff's part before her termination. In an effort to dispute this testimony, Plaintiff makes a careful recitation of facts to show she reported to Mr. Bruner every incident of offensive behavior

10

by a coworker and Mr. Bruner informed Ms. Mulanax of many of Plaintiff's reports. Plaintiff presents no fact or evidence, however, to show that she voiced her concerns in terms of sexual or racial discrimination or harassment or that she ever mentioned unlawful discrimination or reprisal.[5] According to Mr. Bruner, some complaints that Plaintiff later stated in gender-based terms, such as she was called a "bitch," were at the time stated in general terms of name calling, rude language, or cursing. *See* Bruner Dep. 90:7-13, 91:21-92:2, 97:8-16, 98:4-9, 102:20-103:6. In June, 2004, Plaintiff's complaints to Mr. Bruner became more specific and she reported the exact word allegedly used, but when confronted, the male employee denied making the comment or directing it at Plaintiff. *See* Bruner Dep. 118:11-119:10, 149:10-150:14. The lone incident of sexual misconduct now alleged – that Mr. Dunmore fondled himself while staring at Plaintiff – also was stated in more general terms. Mr. Bruner testified that Plaintiff reported Mr. Dunsmore had "been turning his chair towards" Plaintiff and "playing with himself;" Mr. Bruner reported the complaint to Ms. Mulanax in the same terms, that is, not that Mr. Dunsmore was targeting sexual conduct at Plaintiff but that she had witnessed him engaging in inappropriate workplace behavior. *See* Bruner Dep. 151:11-152:17.

More importantly, Plaintiff has not demonstrated that Ms. Mulanax understood Plaintiff's verbal complaints to be allegations of unlawful discrimination. Plaintiff's statement of facts does not suggest that Mr. Bruner or Ms. Mulanax perceived Plaintiff's grievances to be allegations of an EEO violation or that either supervisor reacted to Plaintiff's complaints as stating EEO concerns.

---

[5] In making this assessment, the Court has limited its review to the facts and record citations provided in Plaintiff's briefs. This focused review is warranted by the circumstances and the court of appeals' emphasis on "the special importance of bringing supportive facts to the attention of the district court in an employment discrimination case. Because of the sheer volume of the record in such cases, a party cannot expect the district court to comb the record and make the party's case for it." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1223 (10th Cir. 2008) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998)).

11

Ms. Mulanax generally responded to Mr. Bruner's reports of problem behavior or conflicts among telephone operators by suggesting additional training on issues such as professionalism and courtesy and instructing Mr. Bruner to provide closer supervision. In short, Plaintiff has not come forward with facts to establish that Ms. Mulanax knew at the time of the termination decision that Plaintiff was communicating a concern about discrimination prohibited by Title VII, as opposed to general grievances about the workplace conduct of her coworkers. Plaintiff has not shown she expressed to supervisors a belief that unlawful discrimination had occurred, or otherwise indicated to them that she was opposing conduct allegedly prohibited by Title VII. Thus, on the record presented, the Court finds Plaintiff has failed to demonstrate that her verbal complaints were protected activity under Title VII.

Therefore, the Court finds Defendant is entitled to summary judgment on Plaintiff's claim of retaliatory termination.

**C.     Hostile Work Environment**

   **1.     Sexual Harassment/Gender Discrimination**

Title VII prohibits subjecting an employee to a hostile work environment. "To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005) (internal quotation omitted); *see Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir.

2007).[6] By its motion, Defendant asserts that Plaintiff cannot establish either the third or forth elements of her claim.

The critical issue in determining whether harassment is based on sex "is whether members of one sex are subjected to a disadvantage to which the other sex is not." *Harsco*, 475 F.3d at 1186; *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). With regard to the conduct of Mr. Dunmore in this case, the inference that his alleged harassment of Plaintiff was based on sex is easy to draw. Plaintiff has presented evidence that Mr. Dunmore engaged in overtly sexual behavior and made offensive comments to Plaintiff using a gender-specific, derogatory term that suggests hostility towards women. *See E.E.O.C. v. PVNF, L.L.C.* 487 F.3d 790, 799 (10th Cir. 2007) (characterizing "the word [bitch] as a sexual epithet that courts have described as intensely degrading" and evidence of gender animus) (internal quotation omitted). Further, under the totality-of-circumstances approach, even gender-neutral conduct considered in context can provide evidence of gender-based harassment. *See Harsco*, 475 F.3d at 1187 (animal noises, baby noises, and name-calling by coworkers could be considered); *see also Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) ("Conduct that appears gender-neutral in isolation may in fact be gender-based, but may appear so only when viewed in the context of other gender-based behavior."). Here, the Court finds Plaintiff has demonstrated a genuine factual issue with regard to the third element of her sexual or gender-based harassment claim.

As to the fourth element, the court of appeals has explained the severity or pervasive requirement as follows:

> "For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated

---

[6] In addition, a plaintiff must identify a basis for holding the employer liable for the alleged harassment. Defendant does not mention this fifth element, and thus, the Court does not address it.

13

> with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Fed. Home Loan* [*Bank*], 155 F.3d 1257, 1261 (10th Cir.1998) (quotation omitted). To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Harris v. Forklift Sys., Inc.*[,] 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In addition, the environment must be both subjectively and objectively hostile or abusive. *Id.; see also Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.1998).

*Mackensie v. City of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005); *see Harsco*, 475 F.3d at 1187. The fact-finder must "judge the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Harsco*, 475 F.3d at 1187; *see Oncale*, 523 U.S. at 81; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). As noted above, in making this judgment, both overtly gender-discriminatory conduct and facially neutral behavior may be considered, under the totality of circumstances, in determining whether severe and pervasive harassment occurred. *See Chavez*, 397 F.3d at 833; *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).

Upon careful review of the record presented, the Court concludes Plaintiff has made a minimally sufficient showing to demonstrate a genuine dispute as to whether she was subjected to conduct by coworkers that could be viewed as severe or pervasive enough to create a hostile or abusive working environment. In reaching this conclusion, the Court is constrained by Rule 56 to accept all reasonable inferencesame inferences. For example, the word "bitch" may be used in a non-sexual context to suggest overbearing behavior, but its use to convey a gender-based insult is a permissible inference to be decided by the finder of fact. *See PVNF*, 487 F.3d at 798-99. Further, the Court is constrained by controlling case law to consider the few incidents that are arguably sexual or gender-based in combination with the numerous other facially-neutral, hostile incidents

directed toward Plaintiff during her one-year term of employment. Viewed in this way, the Court finds minimally sufficient facts from which reasonable jurors could find that Plaintiff was subjected to a work environment permeated with gender hostility. Thus, Plaintiff has demonstrated a genuine factual issue with regard to the fourth element of her sexual or gender-based harassment claim.

Therefore, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's claim of hostile work environment sexual harassment.

### 2.  Racial Harassment

For Plaintiff's racial harassment claim to survive summary judgment, "the record must support an inference of a racially hostile environment and support a basis for employer liability." *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000); *see Tademy v. Union Pacific Corp.*, No. 06-4073, 2008 WL 852491, *5 (10th Cir. April 1, 2008) (to be published). To establish a racially hostile environment, "it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citations omitted).

Plaintiff argues in her brief that she has made a sufficient showing of a hostile environment based on her African-American race. In her statement of facts and evidence, however, she fails to point to any fact from which a reasonable fact finder could infer racial hostility or conclude that the incidents of alleged harassment were motivated by racial animus. Therefore, the Court finds Plaintiff has not demonstrated a genuine dispute of material fact regarding her claim that she was subjected to a racially hostile work environment.

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of hostile work environment racial harassment.

### 3. Retaliatory Harassment

The court of appeals has recognized a Title VII claim of retaliatory harassment by coworkers in a very limited context:

> [B]ecause harassment must be intentional on the part of the employer, we hold that an employer can only be liable for co-workers' retaliatory harassment where its supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions. An employer may not be held liable for the retaliatory acts of co-workers if none of its supervisory or management-level personnel orchestrated, condoned, or encouraged the co-workers' actions, and no such management participation could occur if the supervisory or management-level personnel did not actually know of the co-workers' retaliation.

*Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998) (citation omitted); *McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006). In addition to the paucity of facts or evidence to show Plaintiff's supervisors knew she was opposing conduct that she believed violated Title VII – as necessary to establish retaliation, discussed above – Plaintiff has pointed to no fact tending to show that management personnel orchestrated or condoned alleged retaliatory harassment by coworkers. Plaintiff has not shown that she expressed in any of her various complaints to Mr. Bruner or Ms. Mulanax her current accusation that coworkers' conduct was retaliatory treatment for past discrimination complaints or past opposition to unlawful discrimination. In short, no reasonable juror could conclude from the facts presented by Plaintiff that management personnel orchestrated or condoned retaliatory harassment by her coworkers.

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of hostile work environment retaliatory harassment.

### D. Discriminatory Termination

Because Plaintiff relies on circumstantial proof that her termination was motivated by gender and race, Defendant seeks summary judgment based on the burden shifting analysis of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1216 (10th Cir. 2002). Under this analysis,

> the plaintiff carries the initial burden of establishing a prima facie case of [gender] discrimination [and retaliation]. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. If the defendant makes this showing, the burden then shifts back to the plaintiff to show that the defendant's proffered justification is pretextual.

*Young v. Dillon Companies, Inc..*, 468 F.3d 1243, 1249 (10th Cir. 2006).

Here, Defendant does not question whether Plaintiff can establish a *prima facie* case of discrimination with respect to her termination.[7] Defendant instead contends it had legitimate, nondiscriminatory reasons for the decision to terminate Plaintiff's employment. Because Defendant has produced evidence to support these reasons, Defendant has satisfied its evidentiary burden. *See Reeves v. Sanderson*, 530 U.S. 133, 142 (2000) (the employer's "burden is one of production, not persuasion; it can involve no credibility assessment"). Thus, the question becomes whether Plaintiff can demonstrate these reasons are pretextual; to do so she must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*. at 143.

A plaintiff demonstrates pretext by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147.

---

[7] Defendant has, however, challenged Plaintiff's *prima facie* case of retaliation, *see supra* Part B.

17

> A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)).  Evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999)).

*Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005).  Where an employer provides more than one reason for a challenged decision, the plaintiff generally must present evidence to defeat each justification. *Id*. at 1309-10.

> Something less than total failure of the employer's defense is sufficient to create a genuine issue of fact when (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility; (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.

*Id*. at 1310 (internal quotations omitted).

Here, Defendant's stated reasons for Plaintiff's termination, both at the time of the decision and in its summary judgment brief, concern Plaintiff's allegedly unsatisfactory work performance, including tardiness, unprofessional conduct toward coworkers, and poor or argumentative communication with coworkers.  In addition to Ms. Mulanax's admission that the tardiness issue was resolved in 2003 and was not a problem at the time of her decision in July, 2004, these stated reasons were undermined by the testimony of Plaintiff's direct supervisor, Mr. Bruner, that he did not report any performance problems regarding Plaintiff to Ms. Mulanax and he was unaware of any

performance problems that would justify her termination. *See* Bruner Dep. 41:24-42:4. Further, in her deposition testimony, Ms. Mulanax's justifications hinged on matters of professionalism and attitude that appear entirely subjective. Plaintiff had received a personnel evaluation in May, 2004, in which she was rated as fully satisfactory and no areas needing improvement were identified. *See* Bruner Dep. 40:7-13, 41:4-8. From this evidence, one could reasonably find that Ms. Mulanax's stated reasons for discharging Plaintiff were not her true reasons but were pretextual.

In short, the Court finds that Plaintiff has demonstrated genuine issues of material facts relevant to findings of pretext and gender or race discrimination in the termination of her employment. Therefore, Defendant is not entitled to summary judgment on Plaintiff's claim of discriminatory termination.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [Doc. 20] is GRANTED in part and DENIED in part. Defendant is entitled to summary judgment on Plaintiff's claims of retaliation and racially hostile work environment. Defendant is also entitled to a determination that punitive damages are not at issue. In all other respects, Plaintiff's Title VII claims of discrimination in the termination of her employment and hostile work environment sexual harassment remain for trial.

IT IS SO ORDERED this 24th day of April, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE